# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*September 08, 2023*
Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| CLAUDE EDWARD SLAUGHTER III | ) | Case No. 4:23-mj-1834 |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 2, 2023** in the county of **Harris** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 922 (g) (1) | Felon in possessino of a firearm |
| 18 USC 922 (o) (1) | Possession of a Machingun |
| 26 USC 5861 (D) | Possession of Unregistered NFA Firearm |

This criminal complaint is based on these facts:
See attached Affidavit in support of arrest warrant

☑ Continued on the attached sheet.

*Complainant's signature*

Ryan Dowling, Special Agent
*Printed name and title*

Sworn to before me by telephone

Date: 09/08/2023

*Judge's signature*

City and state: Houston, Texas

Honorable Yvonne H. Ho
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan Dowling, being first duly sworn, depose and state the following:

1.	I am a **Special Agent** with the **Federal Bureau of Investigation** and have been since **July 2018**. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2516. I am currently assigned to the FBI Houston Division Field Office as part of the Violent Crimes Task Force.

2.	During my time in the FBI, I have participated in investigations of violent crimes, drug trafficking, gun trafficking, export violations, money laundering, complex conspiracies, and among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Through my training, education, and experience, I have become familiar with the patterns of activity regarding the sale, distribution, and manufacturing of illegal narcotics and the methods they employ to plan, coordinate, and conduct these activities, including the use of telecommunication devices such as cellular telephones, use of counter surveillance techniques, and the use of cryptic language, words, and references to conduct their transactions. Suspects often communicate using both voice calls and message applications prior to, during, and after the execution of a robbery. Additionally, I am familiar with the methods violent criminals employ to obfuscate their physical appearance, such as using "drop" phones, purchasing property under other people's names and/or aliases, operating different vehicles, and use of counter surveillance to prevent attention from law enforcement and other parties that could endanger them and their criminal enterprise.

3.	The information enumerated in the paragraphs below, furnished in support of this affidavit, is either personally known by me, or has been relayed to me by other federal agents or officers, state and local sworn law enforcement officers, or reliable witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, the affidavit may not contain every fact known to me during the investigation.

4.	The FBI Houston Violent Crimes Task Force (VCTF) is investigating the drug related homicide of Colvin Celestine, hereinafter referred to as Celestine, date of birth 08/30/1995 which occurred at a residence located at 11151 Spottswood Drive, Houston, Texas, 77016. This investigation is also being investigated by the Houston Police Department (HPD) Homicide Unit, Case number 97801-23.

5.	Through a Confidential Human Source (CHS), the FBI received information that Celestine had recently incurred a drug related debt in the amount of approximately $10,000. This debt was for pills, cocaine, and promethazine (AKA "Lean"). Reportedly this debt was to **Claude Edward Slaughter III** (hereinafter referred to as **Slaughter**) who is reported to be a member of the "Manor Mob", a Houston based violent gang which traffics in narcotics and firearms. The CHS advised that **Slaughter** receives large amounts of cocaine, pills, promethazine, and marijuana and distributes them to several trap houses in the Northeast area of Houston and that Celestine was a

customer. Witness statements implicated that **Slaughter** got into an argument over the debt and **Slaughter** pulled out a gun and started firing at Celestine**.**

6. The FBI VCTF in conjunction with HPD Narcotics Units, conducted a prolonged physical surveillance of **Slaughter** and observed patterned behavior consistent with narcotics trafficking. Methods employed by the VCTF consisted of physical surveillance, aerial surveillance, and electronic surveillance. Through this surveillance, the VCTF identified Slaughter's residence as a location from where he stored and trafficked narcotics. The VCTF observed several instances where he conducted narcotics related activity in the driveway of his residence.

7. On May 2, 2023, the FBI VCTF, Texas Department of Public Safety, and HPD's Narcotics Division, effectuated the arrest of **Slaughter** for his murder warrant documented in HPD incident 97801-23. The surveillance team located **Slaughter** in the parking lot of Fitness Connection 9669 FM 1960 Bypass Road W, Humble, TX 77338. The team observed **Slaughter** enter his known GMC Sierra 2500, bearing Texas license plate RZT9308 where a traffic stop was initiated in the vicinity of Wilson Road and Sam Houston Tollway feeder road, where **Slaughter** was taken into custody. **Slaughter** was the sole occupant and driver of the truck.

Subsequent to the arrest, a federal search warrant issued in the Southern District of Texas for 4518 Mallory Creek Drive, Humble, TX 77396, a residence determined to be the primary address for **Slaughter**, was executed by the FBI VCTF.

8. During the search, your affiant observed several pieces of mail addressed to "Claude Edward Slaughter III" with a listed address of 7903 Barnhill Drive. In the master bedroom, your affiant observed all male clothing as well as personal photographs of **Slaughter** and a female. No other bedrooms were occupied in the residence.

9. Additionally, the following items were seized in the master bedroom:
    - Glock pistol, s/n BGVW662 with gold "switch" attachment; nightstand,
    - 60 round AR/M4 drum magazine with bullets; on top of dresser,
    - (6) pill bottles of assorted pills; nightstand,
    - AR-15 styled rifle, s/n 20-070469; on top of dresser,
    - Glock pistol, s/n 055925 with (8) 10mm rounds; nightstand,
    - Draco rife, PMD 15659-19RO; on top of dresser.

10. The following items were seized from the master bedroom closet:
    - Approximately $229,303.00 of US currency; found in shoe boxes,
    - Short barrel AR-15 style pistol, no serial number.

11. The following items were seized from the kitchen:
    - 1 gal bottle with unknown purple liquid,
    - Assortment of marijuana products
    - Clear plastic bag with white substance (later confirmed to be approximately 70 grams of cocaine)
    - (6) pill bottle of assorted pills

- Silver scale
- Gold Apple iPhone
- (2) AWS scales
- (3) money counters

12. The following items were found in the garage:
- Glock Pistol, s/n XRS710 with gold "switch" attachment
- Box with (3) 1-pint bottles of promethazine

13. During the search, **Slaughter**'s family arrived at the scene. Your affiant spoke with Karen Reeder who claimed to be **Slaughter**'s mother. Reeder stated that 4518 Mallory Creek was **Slaughter**'s residence and that he rented it from his aunt, Belinda Wright. Your affiant also spoke with Wright who advised she owned the house but rented it to **Slaughter** who paid her rent in cash each month.

14. Your affiant visually inspected each firearm and conducted a function check. Each firearm was fully functional and appeared to be cable of firing ammunition. Additionally, your affiant requested a National Integrated Ballistic Information Network (NIBIN) test for each firearm by the ATF. The NIBIN test determined that each of the six firearms were fully functional. The two glock pistols with "switches" attached were examined by the FBI Firearms Laboratory and determined to be fully automatic, which meets the definition of a machinegun as defined in NFA 26 USC 5845(b).

15. On August 21, 2023 ATF Agent D. Rosamilia conducted a search of the National Firearms Registration and Transfer Record (NFRTR) and determined negative results for Claude Edward Slaughter III DOB 10/22/1992. The Defendant does not have any firearms registered to him in the NFRTR and neither of the glock pistols with switches attached are registered in the NFRTR. Firearms defined as machineguns in the NFA 26 USC 5845(b) are required to be registered in the NFRTR.

16. **Slaughter** has been convicted of a felony offense punishable by more than one year in prison. Based on **Slaughter's** history, he is therefore a felon and is prohibited to be in possession of a firearm or ammunition.

17. Based on your Affiant's training and experience, and the aforementioned facts and observations, your Affiant believes there is probable cause to believe that Slaughter was a felon in possession of a firearm in violation of Title 18, United Sate Code Section 922(g)(1) and did knowingly possess a machinegun conversion device, which is a part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and is, therefore, a machinegun as defined in 26. U.S.C., Section 5845 (b). In violation of Title 18 United States Code, Section 22 (o)(1) and 924 (a)(2).

Ryan Dowling
Special Agent
Federal Bureau of Investigation


Sworn to by telephone on ___September 8___, 2023 and I find probable cause.

Honorable Yvonne H. Ho
United States Magistrate Judge